UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.S.1, J.S.2, T.S., and A.T., by and through their guardian ad litem, SAVANA ST. CLAIR, <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>COUNTY OF KERN, et al., <br><br>　　　　　Defendant. | Case No.: 1:20-cv-1557 DAD JLT <br><br> ORDER VACATING THE HEARING DATE OF APRIL 2, 2021 <br><br> FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF THE MINOR'S COMPROMISE (Doc. 11) |

　　　　J.S.1, J.S.2, T.S., and A.T., by and through their guardian ad litem Savanah St. Clair, assert they were wrongfully removed from the custody of their parents. Plaintiffs seek to hold defendants liable for violations of their constitutional rights related to "their unwarranted seizure from their parents and family home by government Child Protection Services workers." (Doc. 11-1 at 2; *see generally* Doc. 1.) The parties have settled the action, and Plaintiffs now seeks Court approval of the settlement. (Doc. 11.) Defendants do not oppose the motion.

　　　　The Court finds the matter suitable for decision without oral argument, and the motion is taken under submission pursuant to Local Rule 230(g). Accordingly, the hearing date of April 2, 2021 is **VACATED**. For the reasons set forth below, the Court finds the proposed settlement of the claims to be fair and reasonable, and the Court recommends the motion for approval of the minors' compromise be **GRANTED**.

1

## I. Background

On September 24, 2013, social workers employed by County of Kern went to the home where the minor plaintiffs resided with their parents, Savanah and Andy St. Clair. (*See* Doc. 1 at 10, ¶¶ 39-42.) Rocha and Marvin arrived at the home around 11:30 a.m., at which time Andy met the officers outside. (*Id.*, ¶ 39.) Plaintiffs allege that "Marvin pushed passed Andy and entered the home without consent and over Andy's objection," and Rocha followed him inside. (*Id.*, ¶ 40.) Once inside, the officers "observed raw medical marijuana on a table in the living room," and "demanded to see Savanah and Andy's medical marijuana authorization documents." (*Id.*, ¶ 41.) Plaintiffs report their parents complied with the request. (*Id.*)

According to Plaintiffs, "Without consent to search the home, Rocha wandered around the home until he found the room where J.S.1 and J.S.2 were sleeping." (Doc. 1 at 10, ¶ 43.) Plaintiffs assert their "bedroom, including the floor, was clean, and there was no noticeable odor. Rocha did not observe any feces or other unsanitary matter in the bedroom." (*Id.*) Plaintiffs assert that Rocha next "searched the pantry and refrigerator," which were "stocked with food and adequate supplies for the children." (*Id.*, ¶ 44.) Rocha also "demanded that Andy prove the house had running water," and "Andy complied." (*Id.* at 11, ¶ 44.) During the search, "Savanah made arrangements with Peggy St. Clair to pick up and care for J.S.1 and J.S.2, in the event Savanah and Andy were arrested." (*Id.*, ¶ 45.) Plaintiffs assert that around 12:30 p.m., Savanah stated she needed to pick up A.T. and T.S. from school, but "Marvin prohibited Savanah from picking up her children" and "commanded Savanah to remain in the home and to find someone else to do it." (*Id.*, ¶ 50.) Savanah contacted her father, John Tarver, who agreed to pick up A.T. and T.S., and to take care of them if their parents were arrested. (*Id.* at 11-12, ¶ 50.)

Plaintiffs allege that sometime after 3:00 p.m., a Kern County Code Enforcement Officer arrived at the St. Clair home, and examined medical marijuana plants that were located in a previously locked workshop. (Doc. 1 at 12, ¶¶ 54-55.) The Code Enforcement officer "alleged that Andy was growing too many medical marijuana plants, and was in violation of a County ordinance." (*Id.*, ¶ 55.) Plaintiffs contend the plants were surrendered and removed, and officers "removed all marijuana that was located inside the home." (*Id.*, ¶ 56.) Thus, Plaintiffs contend "even if the plants had posed some

sort of speculative danger to the children, once the plants were removed, any such danger was ameliorated." (*Id.*)

Plaintiffs assert the social workers "conferred and discussed A.T., T.S., J.S.1, and J.S.2's proposed seizure and removal from their parents' custody." (Doc. 1 at 13, ¶ 59.) According to Plaintiffs, "All agreed to seize A.T., T.S., J.S.1, and J.S.2 without judicial authorization and without first obtaining the consent of either parent." (*Id.*) Plaintiffs contend "none of the children were in immediate danger and their parents had made arrangements for their care in the event Andy and/or Savanah were arrested." (*Id.*, ¶ 60.) Plaintiffs assert their arrangements were ignored, and J.S.1 and J.S.2 were taken around 4:00 p.m. to Kern Medical Center, where the children were " medically examined, without a warrant or other similar court order authorizing the medical examination even though the children appeared to be in good health and not experiencing any form of medical emergency." (*Id.*, ¶ 66.) In addition, Plaintiffs assert that Rocha went to John Traver's house, where he "seized A.T. and T.S. without judicial authorization and/or consent and in the marked absence of any form of emergency." (*Id.*, ¶¶ 68-70.) Rocha transported A.T. and T.S. to Kern Medical Center, where these children were also examined "without their parents' knowledge and/or consent and without a court order authorizing the examination." (*Id.*, ¶ 70.) Around 6:00 p.m., Savanah and Andy St. Clair were informed "they were being placed under arrest." (*Id.*, ¶ 71.)

According to Plaintiffs, the following day A.T., then ten years old, was questioned for about one hour "without consent and without judicial authorization." (Doc. 1 at 17, ¶¶ 79-80.) A.T. stated that "she was not the victim of any type of abuse, had never suffered any physical abuse, and was never exposed to any marijuana or other drug." (*Id.*, ¶ 80.) Plaintiffs contend following their seizure, examinations, and A.T.'s interview, "Rocha drafted certain reports, and other documents, pertaining to his investigation and interaction with the other Defendants and the Plaintiffs," which "included false statements, and/or suppressed known exculpatory evidence, in these reports." (*Id.*, ¶ 81.)

On September 26, 2013, Linda Lopez, also a social worker with Kern County Department of Human Services, "drafted the Juvenile Dependency Petition … for A.T., T.S., J.S.1, and J.S.2." (Doc 1. at ¶¶ 9, 82.) Plaintiffs assert, "Lopez did not conduct a reasonable investigation to determine the truth and veracity of the factual statements she set out in the Petition, and Lopez was not present at

Plaintiffs' home on September 24, 2013." (*Id.* at 18, ¶ 83.) After she signed the Petition under penalty of perjury, Lopez filed the document with the juvenile court. (*Id.*, ¶ 84.) Plaintiffs contend:

> The Petition included known material false statements. By way of example, the Petition stated that (1) J.S.1 and J.S.2 were found locked in their bedroom, (2) J.S.1 and J.S.2 bedroom smelled of feces, and (3) feces was located on the floor. The Petition also falsely stated that Savanah is incarcerated and cannot arrange for A.T., T.S., J.S.1, and J.S.2's care. In fact, before Savanah and Andy were arrested, they had already made arrangements for the continued care and custody of their children in the event they were arrested.
>
> Lopez further omitted exculpatory evidence from the Petition. By way of example, Lopez failed to disclose that A.T., T.S., J.S.1, and J.S.2 were never exposed to medical marijuana or smoke, or that the alleged numerous marijuana plants were fenced and/or locked away and inaccessible to the children.

(*Id.*, ¶¶ 85-86.) Plaintiffs contend Lopez also drafted and filed a Detention Report that "included false statements and omitted known exculpatory evidence." (*Id.* at 18-19, ¶¶ 87-89.)

On September 27, 2013, the detention hearing was held. (Doc. 1 at 19, ¶ 90.) "[T]he juvenile court ordered that A.T., T.S., J.S.1, and J.S.2 would continue to be detained from their parents' custody and care." (*Id.*, ¶ 91.) A.T. was placed at the Jamison Center, while "T.S., J.S.1, and J.S.2 were placed in Emergency Foster Care." (*Id.*, ¶ 92.) Toward the end of October, A.T. was placed in a home of another individual. (*Id.*, ¶ 96.) Plaintiffs report that by the end of November 2013, Savanah and Andy "completed parenting classes and were enrolled in additional classes" and "[t]heir house and property [were] also cleaned up." (*Id.*, ¶ 102) According to Plaintiffs, "Lopez refused to inspect and evaluate their home and instead continued to detain the minor plaintiffs from their family home even though she knew there was no basis to continue to do so." (*Id.*) "Ultimately, in January 2014, the juvenile court found no basis for jurisdiction, and dismissed A.T., T.S., J.S.1, and J.S.2's Petitions;" and the children were returned to the custody of their parents. (*Id.*, ¶¶ 108-109.)

Savanah and Andy St. Clair filed a civil action in 2015 for a violation of their rights under the Fourteenth Amendment to the United States Constitution, in Case No. 1:15-cv-01091-LJO.JLT. (*See* Doc. 11-1 at 2.) The children were not parties to that action, "and their independent claims were not addressed in the settlement of their parents' case." (*Id.*) On November 2, 2020, the St. Clair children initiated this action "to recover damages arising from their unwarranted seizure from their parents and family home by government Child Protection Services workers in violation of their independent rights

4

under the Fourth Amendment to the United States Constitution." (*Id.* at 2, citing Doc. 1.) Plaintiffs report, "Because all counsel concerned were already familiar with the underlying facts and circumstances of the case, the parties were able to reach a settlement of all claims in fairly short order." (*Id.* at 2.)

Plaintiffs seek approval of a settlement in the total amount of $250,000.00, which includes "$50,000.00 being distributed to each of the children and deposited into a blocked bank account until the particular child reaches the age of majority, and $50,000.00, representing the total of all attorney's fees and costs incurred, being distributed to the Law Offices of Shawn A. McMillan, APC." (Doc. 11-1 at 2; *see also* Doc. 11-3 at 22-23, § 1.0) Defendants have not opposed the motion or otherwise responded to the request for approval.

## II.     Settlement Approval Standards

No settlement or compromise of "a claim by or against a minor or incompetent person" is effective unless it is approved by the Court. Local Rule 202(b). The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected. Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Thus, the Court is obligated to independently investigate the fairness of the settlement even where the parent has recommended it. *Id.*, at 1181; *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem"). Rather than focusing on the amount of fees to be awarded, the Court must evaluate whether

the net amount to a child is fair and reasonable "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel" and "in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-1182.

### III.    Discussion and Analysis

The petition for approval of the settlement reached on behalf of Plaintiffs A.T., T.S., J.S.1, and J.S.2 sets forth the information required by Local Rule 202(b)(2). By the time the motion was filed, plaintiff A.T. was no longer a minor.[1] (Doc. 11-1 at 5.) T.S. is a twelve-year-old female, born October 3, 2008. (*Id.*) Finally, J.S.1 and J.S.2 are ten-year-old boys, born on December 7, 2020. (*Id.*) They were "detained from their parents' custody and care for approximately four months." (*Id.* at 4.) According to Plaintiffs, "While the children did suffer emotional distress injuries arising from their unwarranted seizure and continued detention, they suffered no lasting physical and/or emotional injury." (*Id.*)

####    A.    Award to Plaintiffs

Plaintiffs, by and through their guardian ad litem, have agreed to accept $250,000.00 to resolve the claims presented in this case. (Doc. 11-1 at 2; Doc. 11-2 at 3, St. Clair Decl. ¶¶ 5-7) After the payment of the proposed attorneys' fees and costs—to which the guardian ad litem has agreed—Plaintiffs will receive $200,000.00, which includes $50,000 for each plaintiff. (*Id.*) The funds will be deposited in blocked accounts, to which Mrs. St. Clair agrees her children will not have access until they are eighteen years old. (Doc. 11-2 at 4, St. Clair Decl. ¶ 8.) However, now that A.T. has turned 18, Mrs. St. Clair requests her funds "be distributed to her directly." (*Id.*) This direct payment was reflected in an addendum to the Settlement Agreement. (Doc. 11-3 at 27.)

####    B.    Proposed Attorney Fees and Costs

In addition to the approval of the settlement itself, any attorney's fee to be paid for representation of minors must be approved by the court. *See* Cal. Prob. Code § 3601. To determine whether a request for fees is reasonable for representation of a minor, the Court may consider the time and labor required, whether the minors' representative consented to the fee, the amount of money

---

[1] The matter was settled before A.T. reached the age of 18. (Doc. 11-2 at 3, St. Clair Decl. ¶ 3.)

6

involved and the results obtained, and whether the fee is fixed, hourly, or contingent. *See* California Rule of Court 7.955(b). When a fee is contingent, the Court should also consider the risk of loss, the amount of costs advanced by the attorney, and the delay in reimbursement of costs and payment of fees to determine if the amount is reasonable. *See* California Rule of Court 7.955(b)(13).

Out of the settlement proceeds, Plaintiffs' counsel will be awarded fees in the amount of 20% of the settlement fund, based upon a written fee agreement with Ms. St. Clair. (Doc. 11-1 at 5.) Counsel reports, "the Engagement Agreement contemplates that my firm would receive 35% of the total settlement if the case were to resolve after a complaint had been filed," but he agreed to accept a reduced rate." (Doc. 11-3 at 3, McMillan Decl. ¶ 4.) Thus, Plaintiffs' counsel requests fees in the amount of $50,000.00. (*Id.* at 4, ¶ 5.)

Plaintiffs report this matter was able to settle quickly "[b]ecause all counsel concerned were already familiar with the underlying facts and circumstances of the case," following the related action filed by Savanah and Andy St. Clair. (Doc. 11-1 at 2.) Based upon the litigation history and tasks undertaken —and particularly the fact that Plaintiffs' guardian ad litem indicates her assent to the fees and costs requested (Doc. 11-2 at 3) —the Court finds the requested fees and costs in the amount of $50,000.00 are reasonable.

### C. Recovery in Similar Actions

As noted above, the Court must consider the outcome of similar cases to determine whether the sum to settle the children's claims is reasonable. *See Robidoux*, 638 F.3d at 1181; *Salmeron*, 724 F.2d at 1363. Plaintiffs contend this action is similar to claims presented in *Bruno v. County of Orange et al.*, Case No. 8:17-cv-01301-CJC-JDE (C.D. Cal. July 18, 2019), and *Pellerin v. Caryn Wagner et al.*, Case No. 2:14-cv-02318-JWS (D. Az. 2016) (attached as Exh. D and E [Doc. 11-3 at 114-156]).

Plaintiffs observe that "*Bruno* involved the unwarranted seizure of two children from the custody of their parents by County of Los Angeles sheriffs based on allegations of physical abuse" and when the matter settled, "$25,000 was allocated to each of the minor plaintiffs." (Doc. 11-1 at 8; *see also Bruno*, 2019 U.S. Dist. LEXIS 227883, at *10 (C.D. Cal. July 18, 2019).). Notably, in finding the settlement was reasonable in *Bruno*, the court observed that several unpublished cases in the Central District had awarded damages in the amount of $50,000 for a child's "unwarranted seizure." *Bruno*,

2019 U.S. Dist. LEXIS 227883, at *11-12.  Similarly, in *Pellerin,* the court found a settlement amount for $25,000.00 for each minor for the wrongful removal from their home.  (*See* Doc. 11-3 at 164.) Thus, the Court finds the cases cited by Plaintiffs demonstrate the settlement here is similar to those amounts awarded to other minors who suffered similar distress caused by unwarranted seizure from their homes.

Moreover, the court finds the amount reasonable based upon the settlement reached in *Doe v. Sierra Cty.*, 2015 WL 4757915, at *1 (E.D. Cal. Aug. 11, 2015).  In *Doe*,  the child was four years old when Sierra County Child Protective Services removed her and her seven-year-old brother from the care of their mother. Despite returning the plaintiff's brother shortly after removal, defendants separated the plaintiff from her mother for almost six years. *Id.* The plaintiff lived in at least seven placement homes. *Id.* At twelve years old, the plaintiff suffered from mental health disorders caused or exacerbated by her ordeal and developed behavioral issues. *Id.* The Court found that the settlement of a total of $80,000 was fair and reasonable. *Id.*, 2015 WL 4757915 at *2.  Notably, A.T., T.S., J.S.1, and J.S.2 were separated from their parents for only months, while *Doe* was separated from her parents for nearly six years, yet the settlement for here is more than half of the settlement amount approved in *Doe.*

Based upon the information provided in the motion and the supporting documents and considering the totality of the facts and circumstances of this case—and most particularly the result achieved—the Court finds the proposed settlement is fair, reasonable, and in the best interests of plaintiffs A.T., T.S., J.S.1, and J.S.

**IV.     Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS:**

1. Plaintiffs' motion for approval of the minor's compromise (Doc. 11) be **GRANTED**;
2. Within 14 days of receipt of a check payable to the order of Savanah as Guardian ad Litem for the minors, T.S., J.S.1, and J.S., the settlement funds shall be placed into a blocked accounts for the benefit of T.S., J.S.1, and J.S., and shall be transferred to the custody of T.S., J.S.1, and J.S. when they reach the age of 18;
3. No withdrawals of principal or interest may be made from the blocked account without

a written order under this case name and number, signed by a judge, and bearing the seal of this Court, until T.S., J.S.1, and J.S. attain the age of 18;

4. The settlement funds designated for A.T. in the amount of $50,000.00 be dispersed directly to Plaintiff A.T. and not placed in a blocked account;

5. Plaintiffs' counsel **be directed** to file, under seal, proof to the Court that the monies were deposited into the blocked account within 21 days of the receipt of the settlement funds from Defendant;

6. The parties **be directed** file a stipulation for dismissal of the action with prejudice, or a joint status report explaining why the stipulation has not been filed within 45 days of the date of service of any order adopting these recommendations, and

7. This order authorizes the filing under seal of documents identifying the blocked account in which the minors' funds are deposited.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **March 23, 2021**              **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE